GRIFFIS, P.J.,
for the Court:
¶ 1. This is an action for the collection of a debt and the enforcement of a security interest through a court-ordered equitable lien. The Bolivar County Chancery Court entered a monetary judgment in favor of Guaranty Bank and Trust Company (“Bank”); held the debtor, James Davis, in contempt; and granted the Bank an equitable interest in the previously secured property. We find that this case should be reversed and remanded for further proceedings consistent with this opinion.
FACTS
¶ 2. On October 29, 2008, Davis procured a loan from the Bank in the amount of $5,010 to purchase a truck. Davis agreed to repay the principal, with interest, for a total amount of $5,341.31, which was due in one lump sum on February 1, 2009. In exchange for the loan, Davis granted the Bank a security interest in or lien on the truck. A certificate of title for the truck was issued, which listed Davis as the owner and the Bank as the first lienholder.
¶ 3. Davis was unable to repay the Bank by the agreed date. The Bank agreed to refinance Davis’s loan. A new promissory note was executed on January 9, 2009. Under the terms of the new promissory note, Davis agreed to pay the Bank the sum of $6,089.52 on or before March 9, 2009. The Bank retained its security interest in the truck. Davis defaulted.
¶ 4. On April 27, 2009, Davis asked an officer of the Bank to release the Bank’s security interest and provide him with a clean certificate of title for the truck. Davis told the officer that this would allow him to sell the truck. Davis committed to then return to the Bank with the proceeds of the sale and pay off his debt to the Bank.
*1235 ¶ 5. The Bank was under no legal obligation to release its security interest. Indeed, the purpose of the certificate of title, which listed the Bank as a lienholder, was to notify any prospective purchaser of the Bank’s security interest. Nevertheless, to the Bank’s detriment, the Bank officer agreed to Davis’s proposal. The Bank released its lien, and a new certificate of title for the truck was issued. The new certificate of title listed Davis as the owner, and no lienholder was listed.
¶ 6. Davis claims that he sold the truck to Troy Stephens for $900. Davis did not tender the sales proceeds to the Bank.
¶ 7. The Bank filed a complaint against Davis. The Bank asked for a monetary judgment against Davis. The Bank also asked the chancery court to reinstate its previously held security interest in the truck and to prevent Davis from disposing of the truck until a hearing was held.
¶ 8. On October 8, 2009, a hearing was held. At the hearing, Davis represented himself, and he acknowledged that he had breached the promissory note when he failed to pay the amount due. Davis advised the chancellor that he had sold the truck to Stephens. Davis provided no documents to prove the sales transaction. The chancellor did not believe Davis’s testimony. The chancellor found that the alleged sale to Stephens had not actually occurred. By order dated October 13, 2009, the chancellor found that Davis was in breach of both the first and second promissory notes and entered a judgment for the Bank in the amount of $17,885.99. In addition, the chancellor granted the Bank an equitable lien in the truck. The chancellor also ordered Davis to return the truck and its certificate of title to the Bank by October 19, 2009.
¶ 9. Davis did not comply. He did not return the truck to the Bank by October 19, 2009. On October 20, 2009, the Bank filed a motion to compel and for an order of contempt. A hearing on the motion was held. Davis again represented himself and promised to return the truck if the chancellor would give him additional time. The chancellor imposed a new deadline of October 31, 2009, for the return of the truck. Davis claims that he went to Stephens and attempted to get the truck back, but Stephens refused.
¶ 10. On November 2, 2009, after Davis again failed to return the truck by the deadline, the chancellor entered an order granting the motion to compel and an order of contempt. Davis was incarcerated.
¶ 11. Thereafter, Davis retained an attorney. Davis’s attorney faxed a letter to the Bank’s attorney and attached a bill of sale and an assignment of title that evidenced the alleged sale of the truck to Stephens. Also, on November 3, 2009, Davis’s attorney filed a motion to set aside the order of contempt. The Bank filed a response to the motion and attached the bill of sale and the assignment of title. This appears to be the first time these documents were provided to the chancellor. Davis claims that he spent nine days in jail on the order of contempt.
¶ 12. On November 6, 2009, Davis’s attorney filed a notice of appeal. The notice indicated that Davis had appealed both the original order, dated October 13, 2009, and the order of contempt, dated November 2, 2009.
STANDARD OF REVIEW
¶ 13. This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002). Legal ques *1236 tions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721 (¶ 5) (Miss.2002).
ANALYSIS
¶ 14. The record before us is minimal. There was no testimony or documentary evidence presented to the chancellor. The transcript of the October 8, 2009 hearing reveals that the chancellor identified the case before the court, allowed opening statements (which were off the record), and then ruled on the case. The record contains no evidence. There is no testimony recorded, and there is no documentary evidence, such as the promissory notes or certificates of title.

1. Whether the chancellor abused his discretion by granting an equitable lien on the vehicle and ordering Davis to return the vehicle.

¶ 15. Davis argues that the chancellor erred when he granted the Bank an equitable lien on the truck and ordered Davis to return the truck and its certificate of title to the Bank. Davis argues that Stephens, as a bona fide purchaser, now has good title to the truck, free of the Bank’s security interest.
¶ 16. The Mississippi Motor Vehicle Title Law provides an exclusive procedure for the perfection of a security interest in a vehicle, with some exceptions that are not applicable to this case. Miss.Code Ann. § 63-21-43 (Rev.2004). “A security interest is perfected at the time the owner signs a security agreement describing the vehicle ..., the secured party gives value, the owner has rights in the vehicle ..., and an application for certificate of title signed by the owner is presented to a designated agent.” Miss.Code Ann. § 63-21^13(2)(a) (Rev.2004). The application for certificate of title has to include the name and address of the secured party and the date of the security agreement. Miss.Code Ann. § 63-21-43(2)(b) (Rev. 2004). Assuming there are no issues with the application, a new certificate of title is then issued that displays, on its face, the lienholder’s security interest. Miss.Code Ann. 63 — 21—45(l)(d) (Rev.2004).
¶ 17. The statute protects innocent purchasers who rely on a clean certificate of title (i.e., a certificate that does not, on its face, communicate that there is a security interest in the subject vehicle). The statute provides that “a security interest in a vehicle ... is not valid against ... subsequent transferees ... unless perfected as provided in this chapter.” Miss.Code Ann. § 63-21-43(1) (Rev.2004). A secured party must note its security interest on the face of the certificate of title or lose it in a contest with a subsequent purchaser. This rule promotes certainty and clarity in transactions, and it facilitates commerce.
¶ 18. The Bank had a perfected security interest in the truck. The Bank is in the business of loaning money, and this includes loaning money to consumers who purchase vehicles.
¶ 19. At one time, the Bank was entitled to the full protection of the Mississippi Motor Vehicle Title Law. The Bank chose to release its security interest. Based on what we can make of the record before this Court, the Bank released its security interest based on Davis’s oral promise to return with the proceeds from selling the truck. The Bank was under no duress. The Bank was not compelled to release its security interest. The Bank was or should have been aware of the potential consequence of its action. Yet, the Bank seeks to use the equitable powers of the chancery court to protect itself when it could have done so but chose otherwise. The Bank lost its perfected status as a lien-holder on the truck based on its knowing and considered action. As a result, the *1237 world was no longer on notice that the Bank had a security interest in the truck.
¶ 20. Davis claims he then sold the truck to Stephens. An unperfected security interest in a vehicle is not valid against a subsequent purchaser. The chancellor’s opinion indicates that there was evidence before the chancellor that Davis had sold the truck to Stephens and that another lender had acquired a security interest in the truck.
¶21. The chancellor found that the transaction did not actually occur. At the hearing, Davis, unrepresented by counsel, apparently presented his testimony to prove that the sale had occurred. He provided no documentation. Yet the record contains no evidence offered by the Bank to refute Davis’s claim that the sale occurred. The chancellor did not believe Davis. The chancellor then invoked his equitable powers to protect the Bank despite being on notice that a third party may have an interest in the truck.
¶22. If Stephens did in fact buy the truck from Davis, as Davis alleges, the chancellor may not impose an equitable lien on the truck. The chancellor’s decision to grant the Bank the right to possess the truck, in a court proceeding to which Stephens was not a party, was an abuse of discretion. Stephens might have acquired good title to the truck, free and clear of the Bank’s interest. If Stephens had acquired the truck as a good faith purchaser for value, the chancellor’s action would deprive him of his property without due process of law.
¶ 23. Neither Davis nor the Bank has raised the issue of whether Stephens should be joined as a party to this case. However, this Court can raise the issue sua sponte when necessary to protect the interest of the absent party. Shaw v. Shaw, 603 So.2d 287, 293-94 (Miss.1992) (adopting the federal courts’ “equitable exception” whereby nonjoinder of an absent person may be raised on the appellate court’s own motion when the interest of the absent person are prejudiced) (citations omitted).
¶ 24. Rule 19(a) of the Mississippi Rules of Civil Procedure provides:
(a) Persons to Be Joined if Feasible. A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:
(1) in his absence complete relief cannot be accorded among those already parties, or
(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff.
¶ 25. Rule 19(a) applies in this case. The chancellor was aware that Stephens claimed an ownership interest in the truck, and his interest would be impaired by the chancellor’s findings in this case. Therefore, we find that Stephens was and is a person to be joined, and the court had the authority to require that he be joined as a party. We reverse the chancellor’s judgment and remand this case for the chancellor to join Stephens if feasible, and if join-der is not feasible, the chancellor should conduct the proper analysis under Rule 19 as to whether the case should proceed in Stephens’s absence and whether the relief granted is appropriate in his absence.
*1238 ¶ 26. We recognize that, on remand, the same result might be reached. The chancellor might again find that the alleged sale did not occur and again grant the Bank an equitable lien on and the right to possess the truck. However, Stephens would have notice and the opportunity to be heard. If Stephens was indeed a bona fide purchaser under the Mississippi Motor Vehicle Title Law, then the Bank cannot have any rights in the truck, and the Bank must seek only a monetary remedy from Davis personally. The Bank certainly knew of the possible consequences that could occur if it released its security interest without payment.
¶ 27. Accordingly, we find that the chancellor abused his discretion when he granted the Bank an equitable lien in property that was or might have been owned by another person who was not a party to the lawsuit. We reverse the chancellor’s judgment and remand this case for further proceedings consistent with this opinion.

2. Whether the chancellor abused his discretion by holding Davis in contempt.

¶ 28. Davis also asks this Court to discharge the order of contempt. Davis argues that he should not be held in contempt because it was impossible for him to comply with the chancellor’s order to return the truck to the Bank. Davis claims that he had already sold the truck to Stephens, who was a bona fide purchaser for value who took title to the truck free and clear of the Bank’s security interest.
¶ 29. The record contains a handwritten order by the chancellor, dated November 5, 2009, that ordered the release of Davis from incarceration. It also set conditions for Davis’s re-incarceration. The Appellee’s Record Excerpts contain an order granting the defendant’s motion to set aside the order of contempt that was executed on November 19, 2009. This order appears to set aside the chancellor’s prior order of contempt. However, this order was not in the clerk’s papers and was executed by the chancellor after the notice of appeal was filed. Thus, the chancellor did not have jurisdiction to enter this order. Nevertheless, Davis has been released from custody. Hence, we conclude that the contempt order is a moot question at this time. “This Court will not adjudicate moot questions.” C.M. v. R.D.H., Sr., 947 So.2d 1023, 1029 (¶ 23) (Miss.Ct.App.2007) (citation omitted). As for as the conditions of the chancellor’s handwritten order, dated November 5, 2009, we specifically note that the condition of re-incarceration may not be executed upon Davis to require his re-incarceration. Therefore, because this issue is moot, we decline to consider it.

3. Whether there is substantial evidence to support the monetary award in the judgment.

¶ 30. Pursuant to Rule 1 of the Mississippi Rules of Civil Procedure, we note that we must address another issue “to secure the just, speedy, and inexpensive determination of every action.”
¶ 31. Based on the record before this Court, it appears that the chancellor’s monetary award in the judgment is not and cannot be accurate. Davis’s lack of legal representation appears to have hindered the full development of the facts and has led to an erroneous interpretation of the amount due under the two promissory notes.
¶ 32. The chancellor found that Davis was in breach of both the first promissory note, executed on October 29, 2008, and the second promissory note, executed on January 9, 2009. The chancellor found the amount due on the first loan was $7,171.53, and the amount due on the second loan was $10,714.46. The chancellor then *1239 awarded the Bank a monetary judgment in the amount of $17,885.99, which is the sum of the two loans. There does not appear to be an award of attorney’s fees added to the principal and interest balance outstanding.
¶ 38. The complaint appears to contradict the chancellor’s finding. In fact, in the complaint, the Bank alleges that the second loan was to refinance the debt created by the first loan. The refinance was necessary because Davis was unable to pay off the first loan by the due date. The second loan essentially supplanted the first loan. The first loan was extinguished. It appears that the proceeds of the second promissory note were used to satisfy the first promissory note. Thus, Davis could not be in breach of a contract for the first promissory note if it was satisfied by the proceeds from the second promissory note. We simply cannot find sufficient evidence in the record that would support a monetary judgment against Davis in the sum of $17,885.99.
¶ 34. For these reasons, the chancellor’s order and judgment, dated October 13, 2009, is reversed, and this case is remanded for further proceedings consistent with this opinion.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF BOLIVAR COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.