FAIR, J.,
for the Court:
¶ 1. Before this Court for review is the enforcement of an agreed judgment. It was clearly within the chancellor’s authority to consider the intent of the parties in entering into the agreed judgment and to fashion a way to carry out that intent. Reluctantly, however, we must reverse and remand for the chancery court to join Bel-issa Powell as a necessary party, after her mother, Julia Powell, gave her a warranty deed to some of the property about two months before the hearing.
¶ 2. This litigation originated as a suit for partition of “heir property,” and it retains the flavor of that statutory remedy. However, the agreed judgment we consider on appeal is one approving and carrying out the intent of a contract between adults for division of real property wholly owned by them when they entered into the agreement. The subject of this judgment could have just as easily have included personal *1272 ty as well as realty and been between seller and purchaser rather than siblings.
FACTS
¶3. Julia, Mary Margaret, and Bennie owned all of what they thought was 37.98 acres of a “forty” that was once the property of their parents. Julia had record fee simple title to 2.02 acres located within the boundaries of the forty, acquired from grantees of her parents. The description of the property to be divided by partition was described as “less and except” those two acres. All three thought the excluded parcel fit into the northwest corner of the forty. When the three siblings could not agree on division, the two sisters sued Bennie, filing a complaint for partition “in kind” and for the surface acreage only, on January 4, 2008.
¶ 4. During early stages of the litigation, it was discovered that the “forty” they thought they owned was actually a “long forty” and that their joint property involved 47.64 acres instead of 37.98 acres.
¶ 5. On January 13, 2008, the parties represented to the chancellor that they had settled the matter, and on February 19, 2009, the chancellor signed an order setting out an agreed-upon method of division of the property. The typed order contains the handwritten words “This is a final judgment,” in the chancellor’s own handwriting and initialed by him. Bennie, Mary Margaret, and Julia all signed the order, as did their attorneys, under the words “AGREED TO:”
¶ 6. The chancellor found this unap-pealed judgment to be a binding contract, signed by all three of thé record owners of the heir property and by Julia as the owner of the 2.02 acres excepted from the description of the heir long forty. He found that disposition and apportionment of title to the entire long forty was within the exclusive power of the three parties to the suit. Their agreement, therefore, was capable of specific performance as a contract through the judgment in which it was embodied and approved.
¶ 7. The judgment on appeal before this Court was entered following Mary Margaret’s motion to hold Julia in contempt for refusing to honor the agreed settlement and to order her “to cooperate with the surveyor and adhere to this Court’s previous Order, and execute any and all necessary instruments to partite the property.” Also before the chancellor was Julia’s Rule 60(b)(6) motion, filed in response to the motion for contempt a year and three months after the final judgment, seeking to void the final judgment and her contractual obligations therein.
¶ 8. All three siblings had contracted in the February 2009 final judgment that division would be by acreage (rather than by value as contemplated in a statutory contested partition), with Julia and Mary Margaret receiving 5.94 acres each, and with Bennie receiving the remaining 35.64 acres. Provisions were set out by agreement for payment of surveys, taxes, expenses and costs and for a surveyor to plat, under general instructions, the “on the ground” boundaries of the acreage each is to receive under their agreement. Attached to the agreement was a marked-up county ownership map generally designating the parcels that each of the sisters owned or were to receive in division. Bennie would get what was left over. A surveyor was to set out the exact boundaries of the sisters’ parcels.
¶ 9. But when the surveyor went onto the land, he discovered that the house Julia was living in, which she and everyone else had represented to be located on the “excepted” 2.02 acres, was not, but actually sat on the “heir property” they were dividing by agreement. The house sat 20.47 feet west of the western boundary of Julia’s 2.02-acre description.
*1273 ¶ 10. On January 31, 2011, the chancellor signed his second “final” judgment. He found that his prior final judgment, and the contract it embodied, could be accomplished. He directed that the description of Julia’s 2.02 acres, which was represented to be beneath her home, be amended by deed so it would be located where she had said it was, and that the remaining 47.54 acres in the long forty be divided as had been agreed by all the siblings almost two years earlier. Mary Margaret’s motion that Julia be held in contempt was denied in the same judgment, though her prayer for mandated performance of the contract was granted by implication in the second judgment. Ten days later Julia moved under Rules 59(a), 59(e), and 60 for a new trial and/or relief from the now fully two-year-old judgment, which the chancellor denied on March 30, 2011. Julia’s appeal followed six days later.
STANDARD OF REVIEW
¶ 11. Questions of law are reviewed de novo. Irving v. Irving, 67 So.3d 776, 778 (¶ 11) (Miss.2011). A chancellor’s factual findings, on the other hand, will not be disturbed unless he was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. Carambat v. Carambat, 72 So.3d 505, 510-11 (¶ 24) (Miss.2011). As long as substantial evidence supports the chancellor’s findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. Joel v. Joel, 43 So.3d 424, 429 (¶ 14) (Miss.2010). Additionally, if the chancellor has made no specific findings and none are required under a “factor test” mandated by case law, we generally proceed on the assumption that he resolved fact issues in favor of the prevailing parties. Ferrara v. Walters, 919 So.2d 876, 881 (¶8) (Miss.2005).
DISCUSSION
¶ 12. Two long-honored equitable concepts were employed by the chancellor: specific performance and the fashioning of an equitable remedy to accomplish it.
¶ 13. It should be emphasized that this is no longer a partition case except to the extent recognized under Mississippi Code Annotated section 11-21-1 (Supp.2012), which allows and favors partition by agreement. The appeal before us addresses a real-estate contract embodied in a final judgment with an agreed partition as its subject.
¶ 14. This Court “has considered specific performance as a ‘particularly appropriate remedy” in matters pertaining to a breach of a real-estate contract, because of real estate’s unique nature.” Houston v. Willis, 24 So.3d 412, 418 (¶ 19) (Miss.Ct.App.2009) (citations omitted). We further added that “judicial discretion notwithstanding, where a contracting party can feasibly be given what he bargained for, specific performance is the preferred remedy.” Id.
¶ 15. The issues in Daughtrey v. Daughtrey, 474 So.2d 598 (Miss.1985), a partition action between husband and wife, are similar to those involved in this case, particularly those relating to estoppel of the wife in that case from challenging her sworn position in prior litigation as to property ownership. Julia’s position also resembles that of the appellant in Estate of Davis v. O’Neill, 42 So.3d 520, 524-25 (¶ 16) (Miss.2010), where it was held:
“A party is not entitled to relief merely because he/she is unhappy with the judgment.” Jenkins v. Jenkins, 757 So.2d 339, 343 (Miss.Ct.App.2000) (citing Stringfellow v. Stringfellow, 451 So.2d 219, 220 (Miss.1984)). Rule 60(b)(6) grants relief from a judgment for “extraordinary and compelling circumstances.” Porter v. Porter, 23 So.3d 438, *1274 450 (Miss.2009) (quoting Briney v. United States Fid. & Guar. Co., 714 So.2d 962, 966 (Miss.1998)). When considering. Rule 60(b)(6) motions, appellate courts have a limited review to determine whether the sound discretion of the trial court has been abused. Stringfellow, 451 So.2d at 221. “When ruling on such motions a balance must be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality in litigation.” Id.
¶ 16. Julia seeks to set aside a solemn contract and start the litigation between herself and her siblings all over, adding adverse possession as a cause of action against her siblings while adding her daughter and anybody else who may have also become nominal necessary parties in the interim.
¶ 17. The pleading seeking that extraordinary relief is her Rule 60(b)(6) motion, the denial of which is on appeal. In that motion she asserted only that “the Judgment is unenforceable since it is ambiguous and unenforceable.”
1118. To the contrary, the chancellor found that the agreed judgment was not ambiguous nor unenforceable, a decision within his discretion. “[D]eerees will be construed as a whole, and in doing so ... effect must be given to all [the decree’s] recitals and with the prime object to ascertain the intention that selected the words used therein.” Rayl v. Thurman, 156 Miss. 8, 15, 125 So. 912, 914 (1930). When addressing an ambiguous judgment, we turn to the general rules of construction. See Wilson v. Freeland, 773 So.2d 305, 308 (¶ 9) (Miss.2000). “A judgment decree or opinion of court is a legal text, and, when questions of meaning arise, answers are sought by ‘the same rules of construction which appertain to other legal documents.’ ” Estate of Stamper, 607 So.2d 1141, 1145 (Miss.1992) (quoting Gil-lum v. Gillum, 230 Miss. 246, 255, 92 So.2d 665, 668 (1957)).
¶ 19. Moreover, the chancellor was eminently correct in his conclusion that a claim of adverse possession, by any party involved, was not properly before the chancery court on Julia’s Rule 60(b)(6) motion. It had not been plead and, under the rules of pleading, was waived and could not be raised by the contracting parties because it merged into the agreement they had submitted and signed, which was approved and memorialized by the chancellor in a judgment entitled to res judicata treatment.
¶ 20. Based on the record before us, the chancellor would have been within his discretion in interpreting the intent of the parties in the agreed final judgment and fashioning a remedy to carry out that intent. However, we must reverse the second final judgment because of the issue of necessary parties. On November 4, 2010, Belissa, Julia’s daughter, recorded a warranty deed from Julia to herself dated November 3, with a description almost (because of what Julia claimed was a scrivener’s error creating a description that does not “close”) exactly matching that of the two acres described in her mother’s deed. So far as the record reveals, the court was not informed of the existence of Belissa’s deed until it was submitted into evidence at the hearing two months later.
¶ 21. Mississippi Rule of Civil Procedure 25(c) provides in relevant part:
In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.
This stands in contrast to Rule 19(a)(2), which states:
*1275 A person who is subject to the jurisdiction of the court shall be joined as a party in the action if ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.... If he has not been so joined, the court shall order that he be made a party.
¶ 22. If we had the authority to rewrite pronouncements of our highest court, we would find Rule 25(c) controlling. However, there is binding precedent that neither Rule 25 nor Rule 19 “trumps” the other, and they are to be viewed together. TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991, 1023 (¶ 120) (Miss.1997). The practical effect of this holding seems to be that Rule 19, broad and mandatory, consumes Rule 25 and removes the issue from the court’s discretion. See Johnson v. Weston Lumber & Bldg. Supply Co., 566 So.2d 466, 469 (Miss.1990) (error under Rule 19 not to join transferee who received title one month before judgment). Although Rule 25 requires a motion before the lower court, the joinder of necessary parties under Rule 19 can be raised for the first time on appeal, or even noticed by the reviewing court sua sponte. Shaw v. Shaw, 603 So.2d 287, 293-94 (Miss.1992).
¶ 23. In light of this authority, we are required to remand to the trial court. Since Belissa’s title to the property she was deeded is likely to prove to be only as good as Julia’s, she has an undeniable interest in the present litigation that is distinct from her mother’s. We are aware that, on remand, the same result might be reached. Davis v. Guar. Bank & Trust Co., 58 So.3d 1233, 1238 (¶ 26) (Miss.Ct. App.2011). But before rendering a judgment the trial court must, at the minimum, notify Belissa and allow her a “meaningful” opportunity to be heard on the specific issues before the court — i.e., the Rule 60(b) and contempt motions. See Aldridge v. Aldridge, 527 So.2d 96, 98 (Miss.1988).
CONCLUSION
¶ 24. The chancellor was within his power to interpret the intention of the parties from the agreed final judgment he had entered at the behest of all owners of the property. The remedy he fashioned to honor their intention and accomplish the result they agreed on was likewise within his discretion. But because Julia’s daughter Belissa is a “necessary party” under Rule 19, this matter must be remanded and Belissa joined under Rule 19(a)(2).
¶ 25. Although we reverse and remand, because of the special circumstances of this case, we exercise our discretion under Mississippi Rule of Appellate Procedure 36 to assign all costs of this appeal to the appellant.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF JASPER COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. ISHEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.