# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01060-COA

**MICHELLE POPE**                                                                              **APPELLANT**

**v.**

**DANIEL FOUNTAIN**                                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2017 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS SR. |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK V. KNIGHTEN |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER BRICE WIGGINS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     This is a paternity matter.  Although there are only two parties to this action, the case really involves three adults: Daniel Fountain, Michelle Pope, and Brian Martin; and one minor child: J.M.

¶2.     On June 15, 2017, the George County Chancery Court entered an order establishing Fountain as the biological father of J.M.  The court also entered a temporary order granting Fountain visitation with J.M. and requiring Fountain to pay child support.  Pope, J.M.'s mother, now appeals from the judgment establishing paternity and the temporary order.  Pope contends that the chancery court erred in entering the paternity and temporary orders because Martin (Pope's ex-husband and the man who had been previously named as J.M.'s legal

father) should have been added as a necessary party to this action under Mississippi Rule of Civil Procedure 19.

¶3. We agree with Pope that Martin should have been added as a party to this action. Therefore, we reverse the chancellor's judgment establishing paternity and remand for further proceedings once Martin has been properly joined. We further find that we lack jurisdiction to address the temporary order on appeal.

## BACKGROUND

¶4. Pope and Martin married on December 23, 1994. Around 2006, Martin had a vasectomy.[1] In 2007, Pope (while still legally married to, but separated from, Martin) engaged in a sexual relationship with Fountain. As a result of her relationship with Fountain, Pope became pregnant. And in October 2007, Pope gave birth to J.M.

¶5. According to sworn testimony, Martin has known since J.M.'s conception that he was not J.M.'s biological father.[2] In fact, upon review of the record, it appears that Martin, Pope, and Fountain each knew, from the time that J.M. was born, that Fountain was J.M.'s biological father. Nonetheless, Pope listed Martin as the father on J.M.'s birth certificate.

---

[1] Prior to Martin's vasectomy, Pope and Martin had conceived four children together.

[2] Martin testified before the George County Chancery Court that he "knew that [J.M.] wasn't [his] because [he] couldn't have children at that particular time." Pope's testimony was consistent:

Q: All right. So . . . when [you] and Mr. Martin got back together and y'all reconciled and you were pregnant, did [Martin] recognize that child not to be his child?

A: He did, yes.

2

It is unclear whether Martin and Fountain agreed to this before Pope listed Martin as J.M.'s father, but both Martin and Fountain were, at the least, aware soon after and did not dispute Pope's action.[3]

¶6.     Notwithstanding Martin being named the father on J.M.'s birth certificate and providing financial support for J.M., Pope also allowed Fountain to have significant visitation with J.M. from the time that he was six months old.[4]  Pope and Fountain agreed to this visitation; it was not court ordered.  According to Pope, she worked a second job on the weekends, and it was helpful for Fountain to keep J.M. while she was working.  Regardless, it is not disputed that Fountain has maintained a relationship with J.M. throughout his life, despite Martin being named J.M.'s legal father.

¶7.     On October 3, 2012, when J.M. was five years old, Pope and Martin divorced.  J.M. is listed as a child of Pope and Martin's marriage in the divorce decree entered by the George County Chancery Court.  The decree, which is still operative, provides that Pope and Martin will enjoy joint legal custody of J.M., that Martin will pay child support and continue providing J.M. with medical and dental insurance, and that Martin will have visitation with J.M.[5]

---

[3] The record suggests that the parties agreed to Martin being named as J.M.'s legal father on his birth certificate because J.M. was born with a congenital heart defect that would require surgery, and Martin, who was on active duty in the United States Navy, agreed to place J.M. on his health insurance as his dependent.

[4] During this time period, Martin was deployed.

[5] Martin was serving active duty with the United States Navy at the time the decree was entered, so visitation was conditioned upon Martin being transferred or otherwise residing within 500 miles of Pope and J.M.

PROCEDURAL HISTORY

¶8.    Approximately three and a half years after Pope and Martin's divorce, on March 21, 2016, Fountain filed an emergency motion for ex parte relief in the Harrison County Chancery Court, Second Judicial District.  Fountain alleged that Pope had abused J.M. (by spanking him with a wooden paddle) and requested temporary sole legal and physical custody of J.M.  Fountain named Pope as the sole defendant and did not include Martin as a party to the action.  That same day, the court held an ex parte hearing.  The court then entered an emergency ex parte order giving Fountain temporary sole physical custody of J.M. and prohibiting Pope from being within 1,000 feet of J.M., until further ordered by the court.

¶9.    Following the entry of the emergency ex parte order, Pope hired counsel.  On March 24, 2016, Pope filed a motion to dismiss or to transfer for improper jurisdiction.  A few weeks later, the Harrison County Chancery Court, Second Judicial District, granted the motion and transferred the case to the George County Chancery Court.

¶10.    On April 11, 2016, Pope filed a separate petition to establish paternity in the George County Chancery Court.  In her petition, Pope alleged that "she and [Fountain] engaged in a sexual relationship that resulted in the conception of their child, namely, [J.M.], born [in October 2007]."  Pope named Fountain as the sole defendant to the petition and did not include Martin as a party to the action.

¶11.    On April 29, 2016, the George County Chancery Court entered an order consolidating the two cases between Pope and Fountain.  On the same date, Fountain filed a response and counter-petition to Pope's petition to establish paternity.  In his response, Fountain admitted

4

that he is the biological father of J.M. and that an order establishing paternity should be entered. In his counter-petition, Fountain requested immediate physical custody of J.M.; temporary child support; a full hearing on the merits to determine permanent custody, visitation, and support rights and obligations of the parties; and an appointment of a guardian ad litem (GAL) for J.M. Following a hearing, the George County Chancery Court entered a temporary order awarding Pope and Fountain joint legal custody, with Pope having visitation, and appointing a GAL for J.M.

¶12. On August 2, 2016, the GAL filed her initial investigative report with the court, recommending that J.M. be placed in Pope's custody and have liberal visitation with Fountain. On August 3, 2016, the court held another hearing. Prior to this hearing, the parties conferenced with the chancellor off the record. Apparently, during the off-record conference, the parties raised the question of whether Martin (J.M.'s legal father pursuant to J.M.'s birth certificate and Pope and Martin's divorce decree) was a necessary party to the action. Once back on the record, the chancellor appeared to agree, stating, "Y'all, I don't know how we got to this point. . . . [W]e should have addressed this before now, but Mr. Martin has got to be a party to this proceeding."[6]

---

[6] The chancellor further explained,

> Here's the problem, Mr. Fountain, is that in order for me to go forward on the paternity, even though you and [Pope] agree, there is a court order out there that says Mr. Martin is the father of [J.M.]. And I'm not–and all three of these lawyers have given me a lot of detail that I'm not going to [go] into–I mean, everybody knows what's going on.
>
> But from a legal standpoint the law required that Mr. Martin either waive process, enter an appearance or be a part of this action. Because right

5

¶13. Despite this recognition, however, the chancellor proceeded with the August 3 hearing. At the end of the hearing, the chancellor found the court lacked the necessary and proper parties to make a determination on paternity: "Although the proof is very strong, we still need Mr. Martin to weigh [in] on this one way or the other." On September 13, 2016, the court entered another temporary order. The pertinent parts of the temporary order stated as follows:

2.

That Daniel Fountain is the biological father of the minor child, [J.M.], date of birth, October . . . 2007. Mr. Brian Martin, [Pope]'s prior husband, must be served and/or allowed to disestablish his paternity to the minor child prior to the establishment of Daniel Fountain's paternity.

3.

That both [Pope and Fountain] are awarded joint legal custody of [J.M.] with [Pope] being awarded physical custody of [J.M.].

4.

[Fountain] shall be allowed visitation . . . .

On September 26, 2016, the court amended the September 13, 2016 temporary order. In this amendment, the court ordered the GAL to file a petition to disestablish Martin's paternity and to contact Martin to determine whether he would agree to disestablish paternity. Martin was not—and has yet to be—added as a party to this action.

¶14. On November 30, 2016, Pope filed a motion to dismiss her paternity action. Fountain filed a response in objection, and on December 28, 2016, the court entered an order denying

---

now he's–from a legal standpoint–is the father of [J.M.].

Pope's motion to dismiss. The order also directed the GAL to file a petition to establish Fountain as J.M.'s father based on the parties' testimony that there is DNA evidence of Fountain's paternity. Although Pope objected to the court's order, on February 17, 2017, the GAL filed a complaint, on behalf of J.M., to establish paternity, child custody, and other relief.[7] This complaint was filed in the ongoing civil action between Fountain and Pope and listed Pope and Fountain as the sole defendants. The complaint did not name Martin as a party.[8]

¶15. On May 22, 2017, the court held another hearing on the outstanding motions. Although Martin had not been named as a party to the action or served with any pleadings, he attended the May 22 hearing and provided testimony as a witness. Pope and Fountain also testified. While no one testifying at the May 22 hearing disputed that Fountain is the biological father of J.M., Martin testified that he wanted to remain J.M.'s legal father and that he had no intention to disestablish paternity.

¶16. Nonetheless, on June 15, 2017, the court entered a judgment establishing paternity and adjudicating Fountain as J.M.'s biological father.[9] On the same date, the court also entered

---

[7] The GAL also filed a complaint to disestablish paternity and for other relief on February 2, 2017. However, the GAL never served the disestablishment complaint on any parties or pursued the disestablishment complaint in any other manner.

[8] The GAL likewise issued summonses to Pope and Fountain but did not issue a summons to Martin.

[9] In the judgment, the court noted: "DNA test(s) received into evidence establish Daniel Fountain as the biological father of [J.M.]; . . . Brian Martin had a vasectomy and therefore could not have conceived [J.M.]; . . . [and] Michelle Pope testified that Daniel Fountain is the biological father of [J.M.]."

a temporary order granting Fountain unsupervised visitation with J.M. every other weekend and requiring Fountain to pay child support for J.M., until further order of the court. On July 14, 2017, Pope filed a notice of appeal.

DISCUSSION

¶17. On appeal, Pope contends that the chancery court erred in entering the judgment establishing paternity and in entering the temporary order. We will address the judgment establishing paternity, but we lack jurisdiction to address the temporary order. *See McDonald v. McDonald*, 876 So. 2d 296, 298 (¶8) (Miss. 2004) ("[A]ppellate review of temporary orders is improper.") (quoting *McDonald v. McDonald*, 850 So. 2d 1182, 1193 (¶46) (Miss. Ct. App. 2002)).

¶18. Pope's primary assertion regarding the judgment establishing paternity is that Martin should have been joined as a party under Mississippi Rule of Civil Procedure 19 before an adjudication of paternity was made, and failure to join Martin was error.[10] The application of Rule 19 is a matter of law, so we apply a de novo review. *Williams v. Williams*, 264 So. 3d 722, 725 (¶5) (Miss. 2019).

---

[10] Pope also generally asserts that "since [Martin] has not, nor does he intend to, disestablish paternity as the legal father, the Court's entry of a paternity [j]udgment was in error." Mississippi Code Annotated section 93-9-10 (Rev. 2018) sets forth "circumstances under which a legal father may disestablish paternity and terminate a child support obligation when the legal father is not the biological father of the child." Even assuming section 93-9-10 has any applicability given the record before us, *see* Miss. Code Ann. § 93-9-10(1)(a) & (3), Pope provides no supporting authority for her assertion that paternity of the legal father must be disestablished before biological paternity can be established. Accordingly, it is waived. *See, e.g.*, *Simmons v. State*, 805 So. 2d 452, 487 (¶90) (Miss. 2001) ("Failure to cite relevant authority obviates the appellate court's obligation to review such issues.").

8

¶19.    A person is a necessary party when he "has such a substantial interest in the suit that no complete, practical, and final judgment can be made without directly affecting his interest or else leaving the controversy in such condition that its final determination may be wholly inconsistent with equity and good conscience." *Mahaffey v. Alexander*, 800 So. 2d 1284, 1285 (¶5) (Miss. Ct. App. 2001).  Rule 19 addresses joinder of necessary parties.  Pursuant to Rule 19(a), *assuming joinder is feasible*,

> A person who is subject to the jurisdiction of the court *shall* be joined as a party in the action if:
>
> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
>
> If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff.

(Emphasis added).  When joinder is not feasible, Rule 19(b) applies.[11]

---

[11] Rule 19(b) states:

> If a person as described in subdivision (a) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether

¶20.    Here, although the court expressly noted at various times in the proceedings that Martin *needed* to be joined in this action, it did not determine if it was *feasible* to join Martin. It is unclear why, despite the court's multiple acknowledgments, the proceedings continued without Martin.  But given that the same court entered Martin and Pope's divorce decree, awarding Martin joint legal custody of and visitation with J.M. and requiring Martin to pay child support, we presume that the court has continued jurisdiction regarding J.M.'s custody. Miss. Code Ann. § 93-27-202 (Rev. 2018).  Additionally, although Martin may no longer live in George County, Martin appeared as a witness at the May 22, 2017 paternity hearing, suggesting his ability to attend and participate in this action's proceedings.  We thus continue with a Rule 19(a) analysis.

### I.      Rule 19(a)(1)

¶21.    As noted supra, for the entirety of J.M.'s life (arguably until now), Martin has been considered J.M.'s legal father.  And pursuant to a George County divorce decree, Martin has joint legal custody of J.M., visitation rights, and child support responsibilities.  Given these rights and responsibilities, it is apparent that "in [Martin's] absence complete relief cannot be accorded among [Pope and Fountain]" in this action.  M.R.C.P. 19(a)(1).

¶22.    Pope has asked the court to "award [her] the sole paramount care, custody and control of [J.M.], as well as [establish] permanent child support payments to be made to [her] . . . ." And in his counter-petition, Fountain has requested a full hearing on the merits to determine permanent custody, visitation, and support rights and obligations of the parties.  If Martin is

the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

10

not added as a party to this action, the chancery court risks conflicting orders regarding J.M. and his custody, his child support, and his accessibility for visitation.

## II.     Rule 19(a)(2)

¶23.    Along this same vein, Martin "claims an interest relating to the subject of th[is] action," namely, J.M.[12]  And the complete "disposition of th[is] action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."  M.R.C.P. 19(a)(2). Pope notes that disposition of this action has the potential to diminish Martin's "custodial and visitation rights" as well as dilute Martin's "rights of inheritance."  We agree, though we do not know why Pope—who as plaintiff sought the very relief the chancery court granted—did not include Martin as a party at the outset or after any of the multiple times the chancery court instructed the parties to join him.  Moreover, complete disposition may leave Pope at risk of being subject to inconsistent or contradictory obligations in regard to J.M.'s visitation with Martin and Fountain.  For these reasons, we find that Martin is a "necessary party" to this action.  *See Mahaffey*, 800 So. 3d at 1285 (¶5).

¶24.    "In discussing the joinder of parties under Rule 19, our supreme court has stated that the 'failure to join interested parties . . . under M.R.C.P. 19(a) justifies reversal and remand as a violation of fundamental due process.'"  *Am. Pub. Fin. Inc. v. Smith*, 45 So. 3d 307, 311 (¶9) (Miss. Ct. App. 2010) (quoting *Bd. of Educ. of Calhoun Cty. v. Warner*, 853 So. 2d

---

[12] Martin testified at the May 22 hearing that he considered J.M. to be his child and that he has no intention to voluntarily disestablish paternity.

11

1159, 1170 (¶38) (Miss. 2003)).  This is true even if, "on remand, the same result might be reached." *Powell v. Evans*, 113 So. 3d 1270, 1275 (¶23) (Miss. Ct. App. 2013); *see also Davis v. Guar. Bank & Trust Co.*, 58 So. 3d 1233, 1238 (¶26) (Miss. Ct. App. 2011). Accordingly, we reverse the chancellor's judgment establishing paternity and remand for further proceedings once Martin has been properly joined.

¶25.    **REVERSED AND REMANDED.**

   **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**